nute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 971 | **DATE** | 12/14/2004 |
| **CASE TITLE** | USA vs. Abdul Karim Alhalabi | | |

**IOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DCKET ENTRY:**

- ☐ Filed motion of [ use listing in "Motion" box above.]
- ☐ Brief in support of motion due _____.
- ☐ Answer brief to motion due_____. Reply to answer brief due_____.
- ☐ Ruling/Hearing on _____ set for _____ at _____.
- ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
- ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
- ☐ Trial[set for/re-set for] on _____ at _____.
- ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
- ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
- ■ [Other docket entry]  For the reasons set forth on the attached Memorandum Opinion and Order, the Court finds that the government has failed to establish the existence of an agency relationship between Alhalabi individually and Edward Williams by either substantial evidence. The Court therefore denies the government's motion in limine regarding the statements of Edward Williams (docket #29-1). Status hearing set to 12/21/04 at 9:30 a.m. Ordered time excluded through 12/21/04, pursuant to 18 U.S.C. 3161(h)(8)(i). (X-T1)
- ■ [For further detail see order attached to the original minute order.]

| No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|
| No notices required. | | number of notices | |
| Notices mailed by judge's staff. | | DEC 15 2004 | |
| Notified counsel by telephone. | | date docketed | 50 |
| Docketing to mail notices. | | | |
| Mail AO 450 form. | | | |
| Copy to judge/magistrate judge. | U.S. DISTRICT | | |
| OR6 / courtroom deputy's initials | 2004 DEC 14 PM 4:03 | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 03 CR 971 |
| | ) | |
| ABDUL KARIM ALHALABI | ) | |

## MEMORANDUM OPINION AND ORDER



MATTHEW F. KENNELLY, District Judge:

Defendant Abdul Karim Alhalabi is charged with wire fraud and food stamp fraud. The indictment alleges that he was the owner of Holyland Foods, a grocery store located on the west side of Chicago. The indictment further alleges that Alhalabi exchanged cash for food stamp benefits, knowing that this was prohibited, and fraudulently redeemed those benefits through the United States Department of Agriculture, which administers the food stamp program.

In January 1998, the Department of Agriculture's Food and Nutrition Service sent a letter to "Mr. Karim Alhalabi, President," stating that "there is reason to believe that you, doing business as Holyland Foods, Incorporated, have violated the terms and conditions of the regulations governing the Food Stamp Program ...." Gov't Ex. 13 at 1. In particular, FNS alleged violations of regulations prohibiting exchange of food stamps for cash. In the letter, FNS stated that

> [b]ecause of the seriousness of the above charges, your firm is being considered for permanent disqualification from the Food Stamp Program or the imposition of a civil money penalty.

*Id.* at 2. The letter invited a reply.

On January 15, 1998, attorney Edward Williams sent FNS a letter stating that "I have



been retained by Karim Alhalabi of Holyland Food, Inc., 957 N. Drake, Chicago, Illinois 60651, to represent them concerning the formal charges that were detailed in your letter which was dated January 7, 1998." Gov't Ex. 14. Williams later met with FNS and evidently advised officials verbally that "the increase in [the] store's redemptions is the result of a new meat counter being added to the store." *See* Gov't Ex. 16 (letter form FNS referencing statement by Williams) at 1. FNS rejected this explanation and determined, in August 1998, that Holyland had accepted food stamps for cash. *Id.* at 2. FNS therefore permanently disqualified Holyland from participation in the food stamp program, and determined to impose a civil money penalty. *Id.*

Holyland requested administrative review of the decision. In October 1998, Williams sent a letter, entitled "Re: Holyland Food, 957 N. Drake, Chicago, IL 60651," to "provide [FNS] with additional information regarding our client, Holyland Food, so that the USDA will reconsider the determination of the Chicago Field Office to permanently disqualify Holyland from the Food Stamp Program." Gov't Ex. 20 at 1. In the letter, Williams stated that in May 1997, Holyland had installed a new meat counter, which accounted for a dramatic increase in food stamp redemptions from an average of $30,000 to an average of $150,000 per month. Williams also provided explanations for certain transactions that FNS had cited. He asked FNS to "reconsider the ... determination to permanently disqualify Holyland from the Food Stamp Program." *Id.* at 2. In March 1999, an administrative review officer rejected Holyland's appeal. Gov't Ex. 22.

The government has moved *in limine* to call Williams to testify regarding his communications with FNS and to introduce his correspondence to the agency. The government intends to argue that the explanations that Williams provided to FNS amounted to false

exculpatory statements. *See, e.g., United States v. Rajewski,* 526 F.2d 149, 158 (7th Cir. 1976) (untrue exculpatory statement may be considered as evidence of the defendant's consciousness of guilt).[1] The government does not contend that Williams knew or should have known that the statements were false; rather it seeks to attribute the alleged false statements to Alhalabi. It argues that Williams' statements are admissible against Alhalabi as admissions of an agent under Federal Rule of Evidence 801(d)(2)(D).

Rule 801(d)(2)(D) provides that "a statement is not hearsay if ... [t]he statement is offered against a party and is made by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D). As the proponent of the evidence, the government bears the burden of showing its admissibility.

There is no question that an attorney may be the agent of his client for purposes of Rule 801(d)(2)(D). *See, e.g., United States v. Harris,* 914 F.2d 927, 931 (7th Cir. 1990). But "[t]he unique nature of the attorney-client relationship ... demands that a trial court exercise caution in admitting statements that are the product of this relationship." *Id.* In the present context, the Court must examine carefully whether the predicate of admissibility under Rule 801(d)(2)(D) has been met.

In responding to the FNS inquiries, Williams was acting as counsel for Holyland, a corporation. The government maintains that he was also acting as counsel for Alhalabi individually. There is some evidence to support this claim: Williams' initial letter to FNS,

---

[1] The government says that Alhalabi made similar admissions following his arrest. Any such statements, of course, would be independently admissible and are unaffected by the discussion in this Memorandum Opinion.

3

quoted earlier, starts off by saying that he had been "retained by Karim Alhalabi of Holyland Food, Inc. to represent *them*." Gov't Ex. 14 at 1 (emphasis added); *see also* Gov't Ex. 17. But that letter does not contain any of the statements the government proposes to introduce against Alhalabi. Williams' October 1998 letter, which contains the purported false exculpatory statement, unambiguously provides "information regarding *our client, Holyland Food.*" Gov't Ex. 20 at 1 (emphasis added). Taken as a whole, Williams' letters provide little support for the government's contention that he was speaking on behalf of Alhalabi individually as well as on behalf of the corporation when he responded to the FNS charges.

In making its charges, FNS sought to impose sanctions against the corporate entity, not against Alhalabi individually. *See* Gov't Ex. 13 at 2 ("your firm is being considered for permanent disqualification"; "YOUR FIRM IS LIABLE FOR THE TRAFFICKING ... VIOLATIONS INDICATED ABOVE"). Though Williams testified at the hearing on the motion *in limine* that sanctions imposed by FNS can have an effect on the individual owner of a corporation as well as a corporation itself, there is no indication from the materials submitted by the parties that FNS took any steps to sanction Alhalabi during the administrative proceedings. *See* Gov't Ex. 16 at 2 (determining that "Holyland Food, Inc. ... shall be permanently disqualified from participation in the Food Stamp Program"); Gov't Ex. 22 (referring to review "of the determination ... to permanently disqualify your client's firm from participation in the Food Stamp Program").

Williams was retained in this matter following Holyland's receipt of a letter stating that the firm would be sanctioned. There is no evidence that Alhalabi, after receiving the letter, sought personal, as opposed to corporate counsel. Williams testified that he frequently represents

4

business in matters involving sanctions for violation of the food stamp regulations. He stated that he generally treats both the corporation and its owner as his client. He does this, he said, to be "safe" – as a sanction against the corporation may have an effect no its owner as well. But when asked directly about discussions with clients regarding who he represents, Williams testified that his habit, during the time in question, was *not* to discuss the question of who he represents with the person who consulted him on behalf of a corporation. He also testified that he recalled no conversation with Alhalabi in which they had discussed the topic. In sum, there is no evidence to indicate any awareness on Alhalabi's part that he was hiring personal, as opposed to corporate counsel.

The government points out that Holyland Foods, Inc. had only a single owner. But that does not provide a basis to disregard the corporate form. A corporation can hire a lawyer only if some live person acting on the corporation's behalf seeks out counsel; that act does not give rise to a personal attorney-client relationship involving the person who hires counsel on the corporation's behalf. As Alhalabi notes, an attorney for a corporation does not have an attorney-client relationship with corporate officers simply by virtue of representing the corporation. *See Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1318 (7th Cir. 1978). The evidence is insufficient to indicate that there was an express agreement for individual representation; there is no indication that Alhalabi sought individual representation; and there is no evidence of any manifestation on Alhalabi's part to have personal as opposed to corporate representation. *See United States v. Keplinger*, 776 F.2d 678, 700-01 (7th Cir. 1985). To put it in the terms used in the government's post-hearing memorandum, the evidence does not show a "meeting of the minds" between Alhalabi and Williams "to represent [Alhalabi] as well as the

5

store." Gov't Mem. at 5.

## Conclusion

For the reasons stated above, the Court finds that the government has failed to establish the existence of an agency relationship between Alhalabi individually and Edward Williams by either substantial evidence, *see United States v. Flores*, 679 F.2d 173, 178 (9th Cir. 1982), or by a preponderance of the evidence, *see Gomez v. Rivera Rodriguez*, 344 F.3d 103, 116 (1st Cir. 2003). The Court therefore denies the government's motion *in limine* regarding the statements of Edward Williams [docket # 29-1].

MATTHEW F. KENNELLY
United States District Judge

Date: December 13, 2004