IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 03 CR 971 - 1 |
| ) | |
| ABDUL KARIM ALHALABI ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Abdul Karim Alhalabi was convicted by a jury of three wire fraud charges and three food stamp trafficking charges. He has moved for an order arresting judgment on the grounds that the indictment failed to charge an offense; for a judgment of acquittal; or for a new trial.

1.  **Whether the indictment charged an offense**

The Court rejects Alhalabi's argument that the wire fraud charges (Counts 1, 2, and 3) failed to charge an offense. These counts' charging paragraphs alleged that Alhalabi, for the purpose of executing a scheme to defraud, knowingly caused food stamp benefits to be transmitted for payment and redemption by wire communication in interstate commerce, specifically, certain identified electronic funds transfers. *See, e.g.*, Indictment, Count 1 ¶ 11. These allegations met the requirements of the wire fraud statute. 18 U.S.C. § 1343. Alhalabi's argument that the identified electronics funds transfers were not truly payments or redemptions of food stamp benefits is an argument about the sufficiency of the evidence, not the adequacy of the indictment.

Alhalabi's argument regarding the food stamp charges has some surface appeal but also fails. Counts 4, 5, and 6 alleged that Alhalabi had violated 7 U.S.C. § 2024(b) & (c). These are

two distinct offenses, and for this reason the charges were arguably duplicitous. *See, e.g., United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir. 2001) (duplicity consists of the joining of two charges in a single count). But Alhalabi did not argue before trial, and does not argue now, that these particular charges were duplicitous. In any event, any potential prejudice from the duplicitousness of these charges was cured by the jury instructions, which effectively limited the jury to consideration of a charge under § 2024(b). *See* Instructions Given to the Jury at 26 (requiring the government to prove that Alhalabi "knowingly acquired Link card benefits in a manner contrary to law"). *See Buchmeier*, 255 F.3d at 425 (duplicitous indictment cured by jury instructions that required jury to convict defendant of a single offense); *United States v. Cherif*, 943 F.2d 692, 701 (7th Cir. 1991).

Section 2024(b) prohibits the knowing use, transfer, acquisition, alteration, or possession of "coupons, authorization cards, or access devices in any manner not authorized by this chapter or the regulations issued pursuant to this chapter." An "access device" is a "card, plate, code, account number, or other means of access that can be used, along or in conjunction with another access device, to obtain payments, allotments, benefits, money, goods, or other things of value, or that can be used to initiate a transfer of funds" under the Food Stamp Act. 7 U.S.C. § 2012(t).

Counts 4, 5, and 6 each alleged that Alhalabi "did knowingly acquire, transfer, and possess United States Department of Agriculture Electronic Transfer Card benefits, namely LINK benefits," in that he caused payments to be made to his company's bank account, knowing the LINK benefits to have been received, transferred, and used in an unauthorized manner. *See, e.g.*, Indictment, Count 4 ¶ 2. Alhalabi contends that payments into a bank account are not "coupons, authorization cards, or access devices" and that these Counts thus fail to charge an

2

offense.

The Court again concludes that Alhalabi's argument is an argument about the sufficiency of the evidence, not the sufficiency of the indictment. An indictment charges an offense if it alleges the elements of the offense, *see, e.g., United States v. Sandoval,* 347 F.3d 627, 633 (7th Cir. 2003); whether the proof measures up is a separate matter. The indictment's allegation that Alhalabi knowingly acquired, transferred, and possessed electronic transfer card benefits, though perhaps not as precise as one might want to see in an indictment, was sufficient to state an offense under § 2024(b), as Alhalabi's acquisition, transfer, and possession of electronic transfer card benefits may be said to be an unauthorized use, acquisition, transfer, and possession of an "access device" – i.e., a LINK card. It may also be said to be an unauthorized use, acquisition, transfer, and possession of a "coupon," defined in the Food Stamp Act as including both "authorization card[s]" and "access device[s], including ... electronic benefit transfer card[s]." 7 U.S.C. § 2012(d).

## 2. Whether the evidence was sufficient

In deciding a motion for judgment of acquittal, the Court must view the evidence in the light most favorable to the government, *see, e.g., United States v. Arocho,* 305 F.3d 627, 639 (7th Cir. 2002), and may grant the motion only if no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *See, e.g., Untied States v. Griffin,* 310 F.3d 1017, 1022 (7th Cir. 2002). The evidence was sufficient to permit the jury to convict Alhalabi of each of the charges.

Alhalabi's primary argument for a judgment of acquittal on the wire fraud charges is a reprise of an argument that the Court rejected during the course of the trial, specifically, that the

3

government failed to prove the particular wire communications alleged in Counts 1 through 3. These Counts each identified an electronic funds transfer from Austin, Texas to Firstar Bank in Chicago for deposit into Holyland Foods' account. *See, e.g.*, Indictment, Count 1 ¶ 11. Alhalabi contends that the evidence shows that the only wire communications transmitted from Austin were automated clearing house files that were sent not to Firstar Bank in Chicago but rather to National City Bank in Kalamazoo, Michigan, which stripped out entries for retailers with accounts at that Bank and then forwarded the files by wire to a Federal Reserve Bank, which in turn forwarded the transmission to the various banks where funds were to be deposited, including Firstar. According to Alhalabi, there was no wire transfer from Austin to Chicago; the wire sent by National City was a different wire communication than the one sent from Austin; and the wire from Austin was not itself an electronic funds transfer but rather was a request to make such a transfer.

As the government argues, however, the evidence was sufficient to show that Alhalabi caused Transactive Corporation to send a wire from Austin directing the making of an electronic funds transfer into Holyland's account in Chicago. It is of no consequence that the wire communication did not go directly from Austin to Chicago. *See United States v. Van Cauwenberghe*, 827 F.2d 424, 430 (9th Cir. 1987). The wire communication, considered as a whole, began in Austin and ended at Firstar Bank, and any arguable variance resulting from the fact that there were intermediate steps in no way prejudiced Alhalabi. *See, e.g., United States v. Martino*, 648 F.2d 367, 398 (5th Cir. 1981). In addition, the fact that Transactive's wire communication was not itself a transfer of funds, but rather a direction to make a transfer, is likewise immaterial. This is not a case in which there is a danger that the jury convicted Alhalabi

4

on some different charge that the grand jury returned or a set of material allegations different from the one that the grand jury considered.

The Court also rejects Alhalabi's remaining arguments. First, there was sufficient evidence that Alhalabi participated in a scheme to defraud as late as October 1998, even after he purportedly sold the store (a claim which, we might add, the jury was not required to accept). Among other things, there was evidence that Alhalabi continued to participate in the operation of the store through October 1998. The jury reasonably could conclude from this that he continued to participate during that period in the scheme he had begun to conduct some time earlier. Whether Alhalabi was the person who actually swiped the cards of the recipients who traded benefits for cash on the referenced dates is beside the point.

Second, there was sufficient evidence to show that fraudulent LINK card transactions took place at Holyland on October 7 and 8, 1998, as alleged in Counts 1, 2, 4, and 5. The government presented the testimony of witnesses whose LINK cards were used on those dates. Though Alhalabi had ample ammunition with which to attack their credibility, the jury was entitled to believe their testimony.

Third, there was sufficient evidence that fraudulent LINK card transactions took place on October 9, 1998, as alleged in Counts 3 and 6. Although the cards of the testifying recipients may not have been used on that date, other evidence, including among other things the huge disparity between Holyland's food purchases and its LINK card transactions, and the arguable falsity of the explanations given by Alhalabi when interviewed by law enforcement, was sufficient to permit the jury reasonably to infer that unauthorized transactions had taken place on that date as they did on earlier dates.

Finally, the evidence was sufficient to show that the electronic funds transfers into Holyland's bank account constituted LINK benefits and/or electronic benefit transfer food stamp benefits. The wire communications, as described earlier, involved directions from Transactive Corporation to transfer funds into Holyland's account, and funds were in fact transferred to Holyland's account pursuant to those directions. The amounts of the transfers consisted of the amounts of LINK card / food stamp benefits that had been redeemed at Holyland. Alhalabi seems to suggest that the problem is that the funds transferred were not themselves food stamp benefits. That is a distinction without a difference. Section 2024(b) covers both recipients who present coupons or LINK cards in return for cash and retailers and others who give cash in return for coupons or LINK cards without authorization.

### 3. Whether a new trial should be ordered

Alhalabi's request for a new trial is based on two issues: the Court's denial of his motion to strike surplusage and the allegation that the indictment was constructively amended by the evidence at trial. The Court has previously addressed the surplusage issue and need not repeat that discussion here; it will suffice to say that Alhalabi's arguments do not persuade the Court that its earlier ruling was erroneous.

Alhalabi's constructive amendment argument is likewise without merit. It was not error to allow the government to present evidence of unauthorized LINK card transactions in addition to those specifically alleged; that evidence was relevant and admissible to prove the scheme to defraud alleged in Counts 1, 2, and 3. This evidence did not impermissibly broaden the basis for a conviction on any of the charges. The Court has previously (in this ruling and during the trial) dealt with Alhalabi's other points on the issue of constructive amendment and reaffirms those

rulings.[1]

## Conclusion

For the reasons stated above, the Court denies defendant's motion in arrest of judgment, for a judgment or acquittal, or for a new trial [docket # 90-1, 90-2, & 90-3]. Sentencing will proceed as scheduled on April 19, 2005 at 1:30 p.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 8, 2005

---

[1] The Court notes that contrary to Alhalabi's contention, the jury was not instructed that it could convict him on Counts 4 through 6 if it was proved that he "knowingly redeemed food stamp benefits in exchange for cash through the use of an access device." Rather, the instructions, as noted above, required the jury to find that Alhalabi had "knowingly acquired Link card benefits in a manner contrary to law," which was consistent with the allegations of Counts 4 through 6, not a constructive amendment of those charges.